# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL MERTH,<br><br>    Petitioner,<br><br>    v.<br><br>G. PUENTES,<br><br>    Respondent. | Case No. 1:19-cv-00251-LJO-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 12) |

Petitioner, represented by counsel, is a federal prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is currently incarcerated at the Correctional Institution in Taft, California ("CI Taft") serving a sentence of eighty-seven months for conspiracy to distribute more than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 1 at 1; ECF No. 12 at 1; ECF No. 12-1 at 1).[1] On February 22, 2019, Petitioner filed the instant petition for writ of habeas corpus. (ECF No. 1). Therein, Petitioner asserts that he is due "an immediate correction of his GOOD CONDUCT TIME (GCT) credit of an additional 7 days per calendar year served under his sentence to date" based on the First Step Act. (ECF No. 1 at 2).

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

Respondent filed a response and motion to dismiss, arguing the petition should be dismissed because: (1) the petition is not ripe; (2) requests for transfer to home confinement fail to state a cognizable claim for habeas relief; and (3) Petitioner failed to exhaust administrative remedies. (ECF No. 12). Petitioner filed a traverse and opposition to the motion to dismiss. (ECF No. 13).

## II.

## DISCUSSION

### A. Good Time Credits and the First Step Act

A federal prisoner may accelerate the date of his release from prison by receiving "good time credit," Barber v. Thomas, 560 U.S. 474, 476 (2010), if the Bureau of Prisons ("BOP") determines that "the prisoner displayed exemplary compliance with institutional disciplinary regulations," 18 U.S.C. § 3624(b)(1). Before the enactment of the First Step Act, § 3624(b)(1) stated that a prisoner may receive good time credit "of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term" and that "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." 18 U.S.C. § 3624(b)(1). The BOP's method of calculating good time credits was based on time served rather than time imposed. Barber, 560 U.S. at 478–79. Thus, a well-behaved prisoner with a ten-year sentence would receive 470 days of good time credit instead of 540 days because the BOP's methodology "precludes prisoners from earning credit they would otherwise have earned had they not been released early for good behavior." United States v. Ruiz-Apolonio, 657 F.3d 907, 919 (9th Cir. 2011) (citing Barber, 560 U.S. at 483).

Section 102(b)(1)(A) of the First Step Act amends 18 U.S.C. § 3624(b)(1) to state that a prisoner may receive good time credit "of up to 54 days for each year of the prisoner's sentence imposed by the court" and that "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment." First Step Act of 2018, Pub. L. No. 115-391, § 102(b)(1)(A), 132 Stat. 5194, 5210 (2018).

///

**B. Ripeness**

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). One component of the Article III case-or-controversy requirement is "ripeness, which concerns *when* a litigant may bring suit." Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice, 816 F.3d 1241, 1247 (9th Cir. 2016).

Respondent argues that Petitioner's request for recalculation of his good time credits pursuant to the First Step Act is not ripe because "the section of the First Step Act relied upon, on its face is not yet effective, the Petitioner has not been denied benefit thereof," and "Petitioner seeks to challenge a potential, future sentence computation." (ECF No. 12 at 3). Petitioner contends that the issue presented in the petition is ripe for judicial review because it "is a direct legal dispute regarding the effective date of" the amendment and if Petitioner is correct that the good time credit amendment is effective immediately, then Petitioner is suffering harm because "he remains in prison when he should have already been transferred to a community corrections setting." (ECF No. 13 at 4).

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)). "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" Nat'l Park Hosp., 538 U.S. at 808 (quoting Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57 n.18 (1993)).

"The constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing," which inquires "whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010) (quoting Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

"To evaluate the prudential component of ripeness, we weigh two considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Wolfson, 616 F.3d at 1060 (quoting Abbott Labs., 387 U.S. at 149). A "claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Wolfson, 616 F.3d at 1060 (internal quotation marks omitted) (quoting U.S. West Commc'ns v. MFS Intelenet, Inc., 193 F.3d 1112, 1118 (9th Cir.1999)). "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." Wolfson, 616 F.3d at 1060 (internal quotation marks omitted) (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1126 (9th Cir. 2009)).

Here, the issue presented is whether the First Step Act provision regarding good time credit is effective immediately or whether pursuant to First Step Act § 102(b)(2) the effective date is deferred until the Attorney General completes and releases the risk and needs assessment system within 210 days of the First Step Act's enactment, as required by § 101(a). The issue presented is definite and concrete, purely legal, and does not require further factual development. Petitioner contends that withholding court consideration would result in direct and immediate hardship given that if the good time credit amendment is effective immediately Petitioner should have already been transferred to a community corrections setting.[2] Accordingly, the Court finds that the instant petition is ripe for adjudication.

## C. Cognizability of Request for Transfer

Respondent contends that the petition should be dismissed because all requests for transfers to home confinement fail to state a cognizable claim for habeas relief because the "Court lacks subject matter jurisdiction to review the BOP's discretionary, individualized decisions concerning designations of the place of incarceration." (ECF No. 12 at 4). However, as

---

[2] According to the Individualized Reentry Plan attached to the petition, Petitioner's projected release date was January 21, 2020, and the BOP had approved Petitioner for "a RRC [residential reentry center] date of 09/19/2019." (ECF No. 1 at 30–31). The traverse states that Petitioner's RRC transfer date recently changed to July 21, 2019, which results in a six-month community corrections term. (ECF No. 13 at 2). If the First Step Act's good time credit amendment is effective immediately, then Petitioner argues that his projected release date should be December 1, 2019 and so his transfer date for a six-month community corrections term should have been May 31, 2019. (ECF No. 13 at 2).

noted by Petitioner in the traverse, Petitioner is not asking the Court to make or review a transfer decision, but to find the good time credit amendment provision of the First Step Act to be effective immediately. Such a finding, in turn, would increase Petitioner's good time credits and accelerate Petitioner's projected release date and RRC transfer date. Accordingly, the Court finds that dismissal is not warranted for failure to state a cognizable claim for habeas relief.

**D. Exhaustion**

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). The exhaustion requirement is subject to waiver in § 2241 proceedings if pursuing available remedies would be futile. Id.

Here, Petitioner sent a written correspondence to Respondent informing her that the instant civil action had commenced along with a copy of the petition. (ECF No. 5 at 4). In response to Petitioner's written correspondence, Respondent wrote in pertinent part:

> We have yet to receive guidance from the Bureau of Prisons on implementation of the First Step Act of 2018. Therefore, we do not have the authority grant [*sic*] any provision of the First Step Act of 2018, including the early release under the Title I, Recidivism Reduction, section 102 (b), subchapter D, Risk and Needs Assessment, Prerelease Custody, without guidance from the Bureau of Prisons.
>
> . . .
>
> If there are any other changes to the matter directly related to the First Step Act of 2018, by the Bureau of Prisons, the inmate population will be notified as they were with the changes related to Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 (c) (1) (A) and 4205 (g).

(ECF No. 5 at 3).

As Respondent did "not have the authority [to] grant any provision of the First Step Act . . . without guidance from the Bureau of Prisons," (ECF No. 5 at 3), pursuing administrative remedies would have been futile. Accordingly, exhaustion can be waived.

**E. Effective Date of § 102(b)(1)(A) of the First Step Act**

Having determined that the petition is ripe and exhaustion can be waived, the Court now turns to whether the First Step Act provision regarding good time credits is effective immediately. Section 102 of the First Step Act is titled "Implementation of System and

Recommendations by Bureau of Prisons," and § 102(b) concerns "Prerelease Custody." § 102, 132 Stat. at 5208, 5210. Within § 102(b)(1), titled "In General," § 102(b)(1)(A) amends 18 U.S.C. § 3624(b)(1) to clarify that a prisoner may receive good time credit of up to fifty-four days for each year of the prisoner's sentence imposed by the court, and § 102(b)(1)(B) amends 18 U.S.C. § 3624 to add § 3624(g) regarding earned time credits. § 102(b)(1), 132 Stat. at 5210–13. The remainder of § 102(b) provides, in its entirety:

> (2) EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act.
>
> (3) APPLICABILITY.—The amendments made by this subsection shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987.

§ 102(b)(2)–(3), 132 Stat. at 5213.

In turn, 18 U.S.C. § 3632(a), as added by § 101(a) of the First Step Act, provides that "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system." 18 U.S.C. § 3632(a); § 101(a), 132 Stat. at 5196.

1. Statutory Language

Petitioner argues that the "application of fundamental rules of statutory construction rationally reads the delayed effective date provision as applying *only* to earned time credits for prerelease custody, not to good time credits." (ECF No. 13 at 7). Respondent contends that the plain text of the effective date provision, § 102(b)(2), is unambiguous. (ECF No. 12 at 3–4).

"Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself." Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1168 (9th Cir. 2006). "Where the statute's language is plain, the sole function of the courts is to enforce its terms, for courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructures Group, 387 F.3d

1046, 1051 (9th Cir. 2004) (internal punctuation and citations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

Section 102(b) of the First Step Act is comprised of three components: § 102(b)(1) amends 18 U.S.C. §§ 3624(b)(1) and 3624(g); § 102(b)(2) pronounces the "effective date" of the "amendments of this subsection"; and § 102(b)(3) governs the "applicability" of the "amendments of this subsection." § 102(b), 132 Stat. at 5210–13. When read together, the Court finds that the plain and straightforward reading of the phrase "amendments of this subsection" in § 102(b)(2) refers to the amendments set forth in the entirety of § 102(b)(1) rather than being limited to the amendments in § 102(b)(1)(B). There is no ambiguity.

Petitioner argues that "the amendments in § 102(b)(1)(B) repeatedly use the same phrase 'this subsection' to mean subsection (g) of § 3624, which will govern earned-time transfer to prerelease custody. That phrase—'this subsection'— does not appear in the § 102(b)(1)(A) good time fix. Thus, context strongly favors the narrow reading of delay applying only to subsection (g)." (ECF No. 13 at 7–8). The Court finds this argument unpersuasive because Petitioner fails to consider the different contexts in which the phrase "this subsection" is used. Petitioner mistakenly relies on the phrase as it appears in the quoted references to the United States Code rather than the First Step Act's original framing text.

Based on the foregoing, the plain meaning of the statutory language provides that § 102(b)(2)'s delayed effective date applies to the good time credit amendment set forth in § 102(b)(1)(A). As the Attorney General has not completed and released the risk and needs assessment system, § 102(b)(1)(A)'s good time credit amendment is not yet effective. "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). However, the Court will address Petitioner's arguments that the Court should deviate from the plain language of the statutory text.

///

///

    2.  Absurd Result

Petitioner argues that reading the delayed effective date provision as applying *only* to earned time credits for prerelease custody, not to good time credits, "avoids the serious constitutional problems of irrationally delaying release for a thin sliver of well-behaved prisoners defined only by the misfortune of their projected release dates." (ECF No. 13 at 7).

"Notwithstanding the importance of the text itself, we 'must avoid a literal interpretation of the statute that produces an "absurd" result.'" United States v. Thomsen, 830 F.3d 1049, 1058 (9th Cir. 2016) (quoting United States v. Shill, 740 F.3d 1347, 1353 (9th Cir. 2014)). However, the absurdity doctrine will "override the literal terms of a statute only under rare and exceptional circumstances" and "to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." Crooks v. Harrelson, 282 U.S. 55, 60 (1930). See, e.g., Tovar v. Sessions, 882 F.3d 895, 896 (9th Cir. 2018) (rejecting as absurd interpretation of statute "with the effect that a parent's naturalization can cause a child to be deported forthwith and to wait for decades in a foreign land for an immigrant visa—a visa that he would have had in a short period of time if his parent had not become a citizen"); United States v. Lazarenko, 624 F.3d 1247, 1250–51 (9th Cir. 2010) (rejecting as absurd interpretation of statute suggesting co-conspirators who may have been cheated by their comrades "have just as much right to restitution as do innocent victims").

The Court finds that the instant case does not rise to the "rare and exceptional circumstances" required to invoke the absurdity doctrine. The Court appreciates Petitioner's argument that a delayed effective date would "depriv[e] prisoners of seven days more per year than all prisoners previously sentenced but with later release dates and all future well-behaved prisoners will receive," (ECF No. 13 at 14), but the Supreme Court has recognized that "Congress generally 'intend[s] the full consequences of what it sa[ys]'—even if 'inconvenient, costly, and inefficient,'" Thacker v. Tennessee Valley Auth., 139 S. Ct. 1435, 1441 (2019) (alterations in original) (quoting Federal Housing Administration v. Burr, 309 U.S. 242, 249 (1940)). "Where the statutory language is clear and unambiguous, we need neither accept nor

reject a particular 'plausible' explanation for why Congress would have written a statute" in a particular manner. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 460 (2002). Accordingly, Petitioner has not established that a literal interpretation of § 102(b)(2) results in a patently absurd result.

### 3. Congressional Intent

Petitioner also argues that the good time credit provision should be effective immediately because the purpose of § 102(b)(1)(A) was to conform the statute to Congress's original intent and "[t]he government does not point to a shred of legislative history that indicates an intent – or a reason – to delay the good time credit fix." (ECF No. 13 at 10, 11–12). Petitioner relies on the summary of the Senate Report, which states that the First Step Act "[a]mends Section 3624 of title 18 of the U.S. Code *to clarify congressional intent* behind good time credit . . . to ensure that a prisoner who is serving a term of imprisonment of more than 1 year may receive good time credit of 54 days per year toward the service of the prisoner's sentence." Staff of S. Comm. on the Judiciary, 115th Cong., S.3649, *The First Step Act Section-by-Section Summary*, at 3 (Nov. 15, 2018) (emphasis added).

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" United States v. Ron Pair Enters., 489 U.S. 235, 243 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). "Generally, we may turn to legislative history for guidance only '[w]hen a statute is susceptible to two or more meanings, ... [b]ut the plainer the language, the more convincing contrary legislative history must be.'" United States v. Thomsen, 830 F.3d 1049, 1058 (9th Cir. 2016) (some internal quotation marks omitted) (quoting Schroeder v. United States, 793 F.3d 1080, 1085 (9th Cir. 2015)).

In support of his argument, Petitioner relies on the following language from Gozlon-Peretz v. United States, 498 U.S. 395 (1991): "Given the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment." 498 U.S. at 405. However, the Court finds Petitioner's reliance on Gozlon-Peretz to be unpersuasive. Gozlon-Peretz applied the "well established [rule]

that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment" to § 1002 of the Anti-Drug Abuse Act of 1986 ("ADAA"), which "contains no provision for its effective date. Nor is there an effective date specified for the ADAA as a whole." Gozlon-Peretz, 498 U.S. at 404. Conversely, § 102(b)(2) of the First Step Act explicitly provides a delayed effective date.

As discussed above, the pertinent statutory language is plain, and Petitioner has not established that a literal interpretation of § 102(b)(2) will produce a result demonstrably at odds with the intention of Congress.

### III.

### RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that the motion to dismiss (ECF No. 12) be DENIED and the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 10, 2019**

UNITED STATES MAGISTRATE JUDGE